# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **LINDA TRIMBLE,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**ANDREW M. SAUL, Commissioner** )<br>**of the Social Security** )<br>**Administration,**[1] )<br>)<br>**Defendant.** ) | Civil Action Number<br>**4:19-cv-00202-AKK** |

## **MEMORANDUM OPINION**

Linda Trimble brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the partially adverse decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, in particular the failure to call a medical advisor to explain why Trimble's disability onset date occurred on the date of Dr. Jarrod Warren's independent medical examination instead of on an earlier date, the Administrative Law Judge's ("ALJ") decision is due to be reversed.

### I. PROCEDURAL HISTORY

Trimble protectively filed applications for disability insurance, a period of

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019, and replaces Nancy Berryhill as the defendant in this action pursuant to Federal Rule of Civil Procedure 25(d)(1).

disability, and Supplemental Security Income (SSI) beginning on February 4, 2015. R. 230-41. The SSA denied Trimble's applications, R. 132-36, after which Trimble requested a formal hearing, R. 142-44. During the administrative hearing, Trimble alleged an amended disability onset date of September 15, 2015. R. 61. Subsequently, an ALJ entered a decision partially granting Trimble's applications, finding her disability onset date to be February 2, 2017. R. 28-40. The SSA Appeals Council denied Trimble's request for review, *see* R. 1-7, and, consequently, the ALJ's decision became the final decision of the Commissioner. Trimble has now filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial

evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

3

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving that she is disabled, and, "consequently [s]he

4

is responsible for producing evidence in support of he[r] claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

## IV. THE ALJ'S DECISION

In performing the five-step analysis, the ALJ first determined that Trimble had "not engaged in substantial gainful activity since the alleged onset date, September 15, 2015." R. 31. Accordingly, the ALJ proceeded to Step Two, finding that Trimble had the following severe impairments: "lumbar degenerative disc disease (DDD) and peripheral neuropathy." R. 31. The ALJ then proceeded to Step Three and found that none of Trimble's impairments, considered singly or in combination, met or "medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. 32.

Next, the ALJ determined Trimble's residual functional capacity ("RFC"), finding that based on all of Trimble's impairments prior to February 2, 2017:

> [Trimble] had the [RFC] to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except [she] [wa]s unable to climb ladders, ropes, or scaffolds, or to perform around hazards, or in concentrated exposure to vibration. [Trimble] c[ould] occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. [She] need[ed] the use of a walker or other assistive device while ambulating, particularly over rough or uneven terrain.

R. 33. The ALJ then found that beginning on February 2, 2017,

> [Trimble] has the [RFC] to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except [she] has no limitation of lifting

5

or carrying. [Trimble] is unable to climb ladders, ropes, or scaffolds, or to perform around hazards or in concentrated exposure to vibration. [Trimble] can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. [She] needs the use of a walker or other assistive device while ambulating, particularly over rough or uneven terrain. [Trimble] can stand up to 15 minutes at a time and can sit between 15 and 30 minutes at a time. [She] can work 15 to 30 minutes at a time before needing to rest. [Trimble] needs to lie down or be seated with legs at waist level or above between six and seven hours in an eight-hour day.

R. 36. Based on Trimble's RFC, and relying on the testimony of a vocational expert ("VE"), the ALJ found at Step Four that Trimble could not return to any of her past relevant work. R. 37-38. The ALJ then proceeded to Step Five, where, based on Trimble's RFC prior to February 2, 2017, as well as her age, education, and prior work experience, and relying on the testimony of the VE, the ALJ concluded that "there were jobs that existed in significant numbers in the national economy that [Trimble] could have performed . . . ." R. 80. However, based on the post-February 2, 2017 RFC, as well as Trimble's age, education, and prior work experience, and considering the testimony of the VE, the ALJ found that "there are no jobs that exist in significant numbers in the national economy that [Trimble] can perform . . ." R. 39. As a result, the ALJ concluded that Trimble was not disabled from the alleged disability onset date through February 2, 2017, R. 39, and granted benefits only for the period thereafter.

V.     **ANALYSIS**

The primary issue before the court is whether substantial evidence supported

the ALJ's determination of the disability onset date. Trimble contends that the ALJ (1) failed to properly determine the onset date, (2) failed to accord proper weight to the opinion of a one-time examining physician as to the onset date, and (3) issued a decision denying benefits before the onset date that is not based on substantial evidence.[2] Doc. 6 at 24-32. As the first and the third contentions of error dovetail in their analysis, the court will consider them together before turning to Trimble's second contention. For the reasons discussed below, as to the issues related to the disability onset date, the ALJ's decision is due to be reversed.

## A.

Trimble takes issue with the ALJ's finding that her disability began on February 2, 2017, the date of Dr. Jarrod Warren's independent medical examination ("IME"). Doc. 6 at 24-32. Trimble contends that she became disabled eighteen months earlier. *Id.* She argues that the ALJ should have called a medical advisor to ascertain the onset of her disability, as Trimble "obviously became [disabled] some date before the IME." *Id.* at 24.

---

[2] Trimble alleges in her Complaint, doc. 1, that the Appeals Council erred by summarily denying her Request for Review without comment or analysis of "new and material evidence . . . ," *id.* at 1. However, Trimble fails to elaborate upon or even acknowledge this bare allegation in her supporting brief, doc. 6. Therefore, Trimble has abandoned this contention of alleged error. Although the court does not have to address this claim as a result, the court reviewed the evidence Trimble presented to the Appeals Council nonetheless, *see* R. 8-23, and finds it does not provide any additional support to her contention that the ALJ's decision was not based on substantial evidence.

7

The disability onset date is "the first day an individual is disabled as defined in the Act and the regulations." Social Security Ruling 83–20. When the alleged disability is progressive, "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in . . . gainful activity," and "[c]onvincing rationale must be given for the date selected." *Id*. The relevant factors in determining the onset date for non-traumatic disabilities include the claimant's allegations, her work history, and medical and other evidence related to the severity of her impairment. *Id.* And, while the ALJ may use the claimant's alleged onset date as a starting point, that date must be supported by the medical evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). When an ALJ considers medical evidence and bases the onset date on substantial evidence, the court must affirm. *Moncrief v. Astrue*, 300 F. App'x 879, 881 (11th Cir. 2008).

SSR 83-20 contemplates instances where "it is . . . impossible to obtain medical evidence establishing the precise date an impairment became disabling." In such a scenario, the ALJ must infer the onset of disability. SSR 83-20. Trimble contends that the ALJ's inference in her case was not based on medical evidence. Albeit in an unpublished opinion, a panel of the Eleventh Circuit found that an ALJ should call a medical advisor "[w]here it may be possible, based on medical evidence, to reasonably infer that the onset of a disabling impairment[] occurred

8

some time prior to the date of the first recorded medical examination." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010) (citing SSR 83-20). And, a number of courts in this district have held generally that "[a]n ALJ is required to obtain the assistance of a medical advisor to determine the onset date if: (1) the claimant suffers from a slowly progressing impairment(s) of nontraumatic origin; (2) there is strong evidence the claimant became disabled at some time; and (3) the evidence during the relevant period is inadequate or ambiguous." *Tracy M. v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1417228, at *14 (N.D. Ga. Mar. 29, 2019).[3] The court in *Tracy* found that an ALJ's determination of the onset date was not supported by substantial evidence where "[s]imply put, nothing happened on [that date] . . . that points to that date as the onset date, and the Commissioner has not pointed to anything in the record to show otherwise." *Id.*

In determining the onset date, the ALJ considered Trimble's history of back

---

[3] *See also John A. v. Comm'r, Soc. Sec. Admin.*, 2019 WL 994970, at *15 (N.D. Ga. Feb. 19, 2019) (reversing an ALJ's determination where the ALJ did not "provide[] clearly articulated reasoning and the [c]ourt c[ould] not find support in the record for the ALJ's finding of disability" on the chosen onset date); *Martinez v. Comm'r of Soc. Sec.*, 2018 WL 4328217, at *4 (M.D. Fla. Sept. 11, 2018) (finding that the claimant suffered from a slowly progressing disability as well as strong evidence that she became disabled at some time, but inadequate medical evidence in the record to establish an exact date); *Rojas v. Comm'r of Soc. Sec.*, 2017 WL 2130078, at *10 (M.D. Fla. May 17, 2017) (same); *Powell v. Astrue*, 2013 WL 752961, at *5 (M.D. Ga. Jan. 29, 2013), *adopted by* 2013 WL 750045, at *1 (M.D. Ga. Feb. 27, 2013) ("[The ALJ] d[id] not specifically state how th[e] particular onset date was chosen or why the impairments became disabling on [that date]"); *McManus v. Barnhart*, 2004 WL 3316303, at *6 (M.D. Fla. Dec. 14, 2004) ("[T]he most logical interpretation of SSR 83–20 is to apply it to situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous.").

pain before Trimble's alleged onset date, noting two surgeries, multiple epidurals, prescriptions for pain medication, and use of a walker. R. 34. The ALJ also acknowledged that Trimble has reported little improvement from these interventions. *Id.* However, the ALJ found that "[her] statements concerning the intensity, persistence and limiting effects of these impairments are not consistent with the objective medical evidence." *Id.* In support of this finding, the ALJ cited to a consultative physical examination in April 2015 that showed Trimble had a "[n]ormal range of motion in the lumbar spine [and] demonstrated an ability to stand, carry, handle objects, hear, speak, and travel [but] sitting, walking, [or] lifting for extended periods-of-time may be impaired." R. 35. Based on this consultation and "objective medical evidence from [Trimble's] treating acceptable medical sources in the relevant period,"[4] *id.*, the ALJ found Trimble could engage in light work, subject to some limitations, and that jobs existed in sufficient numbers in the national economy that Trimble could have performed in the period before Dr. Warren's IME. R. at 36, 38-39.

Based on Dr. Warren's assessment,[5] which included an assessment of

---

[4] Dr. Zakir Khan concluded that Trimble was "able to stand, carry, handle objects, hear, speak, [and] travel. Sitting, walking, [and] lifting for extended periods of time may be impaired." R. 615-18. Other objective medical evidence from treating physicians during this period show that Trimble experienced increasing pain and limitations following Dr. Khan's evaluation through Trimble's alleged onset date and Dr. Warren's IME. *See* p. 12, *infra*.

[5] Dr. Warren's IME revealed that Trimble experienced "[s]everely limited flexion due to pain [and] [p]ain with any attempt at extension . . . [or] rotational movement." R. at 947. Dr. Warren found that Trimble could not sit upright for more than 15-30 minutes at a time, could not stand for more

limitations Dr. Warren observed in Trimble that existed back to September 11, 2015, R. 949, the ALJ found that the limitations on Trimble's ability to perform light work had increased. R. 36. As a result, the ALJ concluded that "[b]eginning on February 2, 2017 [the date of the IME], . . . there [we]re no jobs that exist[ed] in significant numbers in the national economy that Trimble c[ould] perform," R. 39. Noticeably absent, however, is any articulation of the ALJ's reasoning for determining the onset date occurred on the date of the IME rather than at some earlier date. In fact, the ALJ's opinion suggests that he may believe the onset date actually occurred before the IME in light of his finding that Trimble's limitations had increased during the time period before the IME.[6] And, critically, there is "nothing contained [in the

---

than 15 minutes at a time, could not perform a task for more than 15-20 minutes without needing to rest, and would need to lie down, sleep, or sit with her legs propped at waist level or above for six to seven hours in an eight hour work day. R. 949. Based on these limitations, Dr. Warren expected Trimble would be off task 75% of an eight-hour work day and would "fail to report to work due to her physical symptoms thirty days out of a thirty day period." *Id.* Dr. Warren opined, "[g]iven her history of gradually worsening symptoms, as well as lack of response to surgical interventions, it is anticipated that [Trimble's] back pain will continue to worsen. It is not likely her limitations will change." R. 947.

[6] As the ALJ acknowledged, the record indicates that Trimble's condition progressively deteriorated leading up to the IME. After Trimble's initial injury in 2008, R. 440, 444, Trimble consistently sought treatment for her pain. This includes:
- 2014—a treating physician found that Trimble had disc degeneration and herniation. R. 643.
- September 2015—approximately six months after Dr. Khan's consultative examination, Trimble sought emergency care for back and lumbar pain, which the physician found to be "constant and worsening." R. 647.
- November 2015—her lumbar flexion was moderately limited due to pain. R. 817.
- August 2016—after her second surgery, the physician administering one of her many epidurals described the following conditions: lumbar post-laminectomy syndrome, lumbar degenerative disc disease, lumbar disc displacement, lumbar radiculopathy, and chronic low back pain. R. 865.

record] indicating that [Trimble's] condition worsened on [February 2, 2017]" that led the ALJ to conclude that is the date Trimble became disabled. *John A. v. Comm'r, Soc. Sec. Admin.*, 2019 WL 994970, at *14 (N.D. Ga. Feb. 19, 2019).

A review of the medical records does not clearly indicate when Trimble reached the level of disability Dr. Warren found during his IME. Instead, the records indicate only—as the ALJ correctly acknowledged—that her condition was constantly deteriorating. And, while the Commissioner cites to evidence that might direct a not-disabled finding before April 8, 2015, *see* doc. 7 at 12 (citing R. 616-18), the medical evidence indicates that Trimble's condition declined between the September 15, 2015 amended alleged onset date and the onset date determined by the ALJ. "Simply put, nothing happened on [February 2, 2017]," *Brothers. v. Astrue*, 2011 WL 2446323, at *10 (N.D. Ill. June 13, 2011), that points to that date as the onset date, and the Commissioner has not directed the court to anything in the record to show otherwise. As a result, the ALJ's finding that Trimble was not disabled prior to the date of the IME is not supported by substantial evidence.

The Commissioner resists this finding by arguing that calling a medical advisor is discretionary, and directing the court to the SSA's Hearings, Appeals, Litigation, and Law Manual (HALLEX) I-2-5-34. As the Commissioner puts it,

---

- November 2016—another treating physician noted a new diagnosis of complex regional pain syndrome, with an onset date of August 2016. R. 911.

HALLEX states only that "[a]n ALJ may need to obtain an ME opinion, either in testimony at a hearing or in responses to written interrogatories, when the ALJ . . . [n]eeds an expert medical opinion regarding the onset of an impairment." Doc. 7 at 7-8 (citing 1994 WL 637370). Indeed, on October 17, 2016, the Commissioner issued an emergency message stating that "SSR 83-20 does not impose a mandatory requirement on an ALJ to call on the services of a medical expert when onset must be inferred. Instead, the decision to call on the services of a medical expert when onset must be inferred is always at the ALJ's discretion."[7] *See Santiago v. Berryhill*, 2018 WL 3208076, at *5 (N.D. Ala. June 29, 2018). However, based on the medical evidence, the majority approach in this Circuit, and the lack of substantial evidence supporting the ALJ's determined onset date, this court finds that the ALJ erred in failing to use a medical examiner to help explain why the onset date occurred on the date of the IME instead of at an earlier date.

**B.**

Trimble contends also that the ALJ failed to properly consider and weigh the opinion of Dr. Warren. Doc. 6 at 26-27. An ALJ must consider all medical opinion

---

[7] In *Santiago*, Judge Madeline Haikala of this court found that the ALJ did not need to infer the onset date because the medical records demonstrated it was after the date last insured. 2018 WL 3208076, at *5. The medical records here, however, are not as clear and the inference was required as a result.

13

evidence in the record, 20 C.F.R. § 404.1527(b)-(c),[8] and "state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). While the opinions of a claimant's treating physician are generally entitled to considerable weight, the same deference does not apply to a one-time examiner's opinions. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citations omitted). In addition, "even the opinion of a treating physician [] need not be given weight when there is 'good cause'—for instance, when a treating physician's opinion is conclusory or inconsistent with [his] own records." *Hernandez v. Soc. Sec. Admin., Comm'r*, 761 F. App'x 901, 903 (11th Cir. 2019) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)). Still, an ALJ cannot substitute his judgment for that of an examining physician when determining the weight to assign a physician's opinion. *See Davis v. Barnhart*, 377 F. Supp. 2d 1160, 1164 (N.D. Ala. 2005) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring)).

The ALJ described Dr. Warren's opinions as "the most comprehensive assessment of the [Trimble's] functional limitations beginning for the current period," and gave them "[s]ignificant, but not conclusive, weight." R. 37. Relevant

---

[8] 20 C.F.R. § 404.1520c superseded 20 C.F.R. § 404.1527(b) effective March 27, 2017 for claims filed before that date. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). The court cites to the regulation that was in effect at the time Trimble filed her applications.

here, the ALJ did not adopt Dr. Warren's opinion that Trimble's onset date occurred before the IME. R. 37. Trimble challenges this decision, arguing that the ALJ "failed to state with at least 'some measure of clarity' the grounds for his decision in repudiating the opinion." Doc. 6 at 26. This contention, which mischaracterizes the ALJ's treatment of Dr. Warren's opinion, in unavailing. Far from "repudiating" the opinion, the ALJ gives it significant weight, basing his partially favorable ruling on Dr. Warren's findings. R. 37. Moreover, the ALJ owes no deference to Dr. Warren, a one-time examining physician,[9] *see McSwain*, 814 F.2d at 619, and may reject any opinion that is "so brief and conclusory that it lacks persuasive weight . . . ," *Hudson v. Hackler*, 755 F.2d 781, 784 (11th Cir. 1985). And, "[w]hile onset may be inferred by a medical expert from non-medical evidence, a disability onset determination must have a legitimate medical basis." *Miller v. Comm'r of Soc. Sec., Admin.*, 280 F. App'x 870, 871 (11th Cir. 2008) (quotation marks omitted). Here, the record suggests no legitimate medical basis for Dr. Warren's opinion regarding the onset date—indeed, as discussed previously, Dr. Warren provided no explanation for it, merely checking a box affirming the question, "Did these limitations exist back to 9/11/15?" R. 949. Furthermore, Dr. Warren's notes suggest that he estimated the

---

[9] The ALJ refers to Dr. Warren as "the treating physician." R. 37. However, the record shows that Dr. Warren was instead a one-time examining physician, R. 945-949, and neither party contests this fact, *see generally* docs. 6, 7, and 8. The ALJ's analysis suggests that he understood Dr. Warren to be an examining, not a treating, physician, and did not engage in the deference required for treating physicians for that reason. *See id.* The court therefore treats this characterization by the ALJ as a scrivener's error.

15

progression of Trimble's condition based in part on Trimble's own claims: "She describes worsening left leg pain and back pain . . . [s]he states th[at] she had no relief from the second procedure and that her left leg pain and neuropathic symptoms have continued to worsen . . . [s]he reports that she has had no improvement . . ." R. 945. Thus, the conclusory nature of Dr. Warren's suggested onset date provides good cause for the ALJ to give that opinion minimal weight. *See Winschel*, 631 F.3d at 1179; *Reuter v. Soc. Sec. Admin., Comm'r*, 2014 WL 58840, *5 (N.D. Ala. Feb. 14, 2014) (holding that an ALJ has good cause to reject a treating physician's opinions contained in a form consisting of the physician's responses to multiple choice questions) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)). The ALJ did not err in declining to adopt the onset date suggested by Dr. Warren.

## VI. CONCLUSION

Based on the foregoing, the ALJ's determination that Trimble was not disabled prior to February 2, 2017 is not supported by substantial evidence. Therefore, the Commissioner's final decision is due to be reversed and remanded for the ALJ to make an onset date determination based on the advice of a medical expert. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 23rd day of March, 2020.

                                          **ABDUL K. KALLON**
                                      UNITED STATES DISTRICT JUDGE